GEORGE JOHN KREINER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kreiner v. Commissioner
Docket No. 7634-88
United States Tax Court
T.C. Memo 1990-587; 1990 Tax Ct. Memo LEXIS 662; 60 T.C.M. (CCH) 1251; T.C.M. (RIA) 90587; November 15, 1990, Filed *662 Decision will be entered under Rule 155. In 1984, petitioner gave money to fortunetellers. These transactions occurred in the State of New York. Petitioner discovered the theft in 1984. Petitioner claimed a theft loss deduction for the amount of money given to the fortunetellers. Held: Under New York law, fortunetelling is a crime. Held further: Under New York law, the crime of fortunetelling constitutes an inchoate theft offense. Held further: Petitioner is entitled to a theft loss deduction in 1984 for monies given to fortunetellers in 1984. Held further: Petitioner is not entitled to a theft loss deduction for amounts lost in a real estate transaction. Held further: Negligence additions to tax are sustained in part. George John Kreiner, pro se. Robert Saal, for the respondent. WHITAKER, Judge
WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION By statutory notice dated January 27, 1988, respondent determined a deficiency in petitioner's 1984 Federal income tax and additions to tax as follows: Additions to Tax
Section
Section Section Deficiency
6653(a)(1) [1]
6653(a)(2)
6661
$ 6,930 $ 328.29 * *663  $ 1,644.50 After concessions, [2] the issues for decision are: (1) Whether petitioner is entitled to a theft loss deduction of $ 19,187 in 1984 for monies given to or expenses incurred on behalf of Celina and Dora Miller. (a) Whether petitioner's payments of monies to the Millers constitutes theft under New York law. (b) Whether the amounts involved have been adequately substantiated. (2) Whether petitioner is entitled to a theft loss deduction of $ 3,500 in connection with a real estate transaction. (3) Whether petitioner was negligent in the preparation of his 1984 income tax return.
FINDINGS OF FACT Some of the facts have been stipulated and are so found. *664 The stipulations and attached exhibits are incorporated herein by this reference. Petitioner, George J. Kreiner, resided in Wayne, New Jersey, at the time his petition was filed. From 1977 to the year at issue, Mr. Kreiner was diagnosed as suffering psychotic depressive reaction/paranoid features. In 1984, he was involved in a divorce action which was finalized later that year. In 1987, the staff at the General Hospital Counseling Center diagnosed petitioner as suffering from a manic depressive disorder which disabled him. During 1984 and early 1985, Mr. Kreiner visited two fortunetellers. The fortunetellers, Celina Miller and Dora Miller resided at 109 W. 42nd Street, New York, New York 10036 (the Millers' address). A business card captioned "Readings by Dora" listed this address. Dora Miller conducted activities as a Spiritualist Reader and Advisor at this address. Celina Miller, age 21 in 1984, is the daughter of Dora Miller and lived at the same address. Celina's driver's license listed her address as the above. Mr. Kreiner believed that the fortunetellers could improve his health and solve his problems. In 1984, petitioner gave substantial sums of money and property to *665 the Millers, particularly Celina Miller, in return for their help. Some of this money was contributed to the Millers' church. The Millers told petitioner to make contributions to their church, the Romanian Church, to ward off evil spirits that threatened him. In 1984, petitioner applied for and received an American Express credit card. Petitioner listed the Millers' address as his home and billing address. The application for the American Express card authorized Celina Miller to use the card. In 1984, petitioner's charges to this account included $ 495 to Theatre Vision, $ 105.84 to Fortunoff, and $ 500 to the House of Carpets. In the same year, petitioner made withdrawals from his account with Anchor Bank in the amounts of $ 4,500, $ 2,400 and $ 1,700. Petitioner made withdrawals from his Citibank account in the amounts of $ 2,500, $ 800, and $ 5,000. Petitioner used some of the money from these withdrawals to make contributions to the Church and to make cash purchases for items for the Millers. Petitioner purchased various items for the Millers in 1984, including carpeting for the premises at the Miller's address in the amount of $ 2,497, tarot cards from Scribner Book Stores *666 in the amount of $ 81.19, perfume from Saks Fifth Avenue in the amount of $ 80.11, a purchase from Style One in the amount of $ 659.24, and a chandelier from Lite Elite in the amount of $ 593.23. In July 1984, Celina Miller, as borrower, and Mr. Kreiner, as coborrower, applied for a consumer loan from Chemical Bank in the amount of $ 4,116.31. Also in 1984, petitioner applied to and received telephone service for the premises at the Millers' address. He gave the Millers cash to pay the telephone bills. In October 1984, petitioner discovered that the Millers were not trying to help him with his problems, and instead were stealing from him. As a result of this discovery, petitioner told the telephone company to turn off the service at the Millers' address and changed his billing address on his American Express credit card to P.O. Box 3567, Wayne, New Jersey 07476. Even though petitioner discovered the alleged theft in 1984, in an attempt to obtain further proof of the Millers' crime, petitioner made small payments to the Millers in the first few months of 1985. Petitioner's mental condition contributed to these actions. Petitioner's illness prevented him from filing a police report *667 on the alleged theft to the police in 1984 or 1985. However, in 1988, after watching a television program on the crime of fortunetelling, petitioner decided to report the alleged theft by the Millers to the police. Petitioner called the State of New York Commission of Investigation to complain that he was allegedly defrauded of several thousand dollars by an "advisor" he consulted during his impending divorce. The Commission determined that this matter was within the jurisdiction of the New York State Department of Law and advised Mr. Kreiner to contact their Bureau of Consumer Frauds. On June 26, 1989, Mr. Kreiner filed a form entitled Verification of Crime/Lost Property with the New York City Police Department. Mr. Kreiner reported that between March 1984 and March 1985, the Millers allegedly stole approximately $ 28,000 from him. On his 1984 income tax return, petitioner deducted $ 22,687 for theft and fraud losses. Petitioner deducted $ 19,187 for losses from theft by the Millers and $ 3,500 due to losses from fraud in connection with the sale of his family residence. Pursuant to a notice of deficiency, respondent disallowed petitioner's deductions for the theft and fraud *668 losses. Respondent also determined that petitioner failed to report $ 2,520 of gross income from the Vacation Expense Plan of the Joint Industry Board of the Electrical Industry (Vacation Plan). Respondent determined that petitioner was negligent in the preparation of his 1984 tax return and substantially understated the tax due. OPINION Respondent contends that Mr. Kreiner is not entitled to the theft loss deduction because, under the laws of New York State, no theft was committed against petitioner. [3]
Section 165(a) and (c)(3) provide that any theft losses suffered by a taxpayer and which are uncompensated for by insurance are deductible. Petitioner has the burden of proving his entitlement to the claimed theft loss deduction. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933)."This includes presentation of proof which, absent positive proof, reasonably leads us to conclude that the article was stolen. If the reasonable inferences from the evidence point to theft, the proponent is entitled to prevail." Allen v. Commissioner, 16 T.C. 163, 166 (1951). *669 Whether a loss from theft has occurred depends upon the law of the jurisdiction where it was sustained. Edwards v. Bromberg, 232 F.2d 107 (5th Cir. 1956); Monteleone v. Commissioner, 34 T.C. 688, 692 (1960); Morris Plan Co. of St. Joseph v. Commissioner, 42 B.T.A. 1190, 1195 (1940). Petitioner alleges that the contacts with the Millers as well as the withdrawals and expenditures took place in the State of New York. Therefore, New York law is controlling. Under New York law: A person is guilty of fortune telling when, for a fee or compensation which he directly or indirectly solicits or receives, he claims or pretends to tell fortunes, or holds himself out as being able, by claimed or pretended use of occult powers, to answer questions or give advice on personal matters or to exorcise, influence or affect evil spirits or curses; except that this section does not apply to a person who engages in the aforedescribed conduct as part of a show or exhibition solely for the purpose of entertaining or amusement.
N.Y. Penal Law sec. 165.35 (McKinney 1975). Only one court in New York has applied this statute. In People v. Ballard, 143 A.D. 919, 533 N.Y.S. 2d 558, 559 (1988), the court found *670 that the evidence adduced at trial established that the defendant claimed or pretended that he could, for a fee, use occult powers to influence or affect evil spirits or curses. Based upon this finding, the court held that defendant's actions constituted the crime of fortunetelling. The court also held that the defendant committed larceny based upon evidence that established to a "moral certainty" that the defendant never intended to recognize that he could not possibly fulfill the promises he made to his victims. Respondent argues that an early New York statute which has been repealed and cases decided under that statute are relevant to this case. Section 899 of the New York Code of Criminal Procedure classified fortunetellers as disorderly persons. The statute provided that fortunetellers did not violate the statute if they acted in good faith. People v. Miller, 46 N.Y.S. 2d 206 (Magis. Ct. 1943); People v. Plaskett, 171 N.Y. Misc. 563, 13 N.Y.S. 2d 682 (Ct. Spec. Sess. 1939)."Acting in good faith" was defined as acting in a sincere endeavor to administer beliefs, practices, or usages of the practitioner's religion. N.Y. Crim. Proc. sec. 899, subd. 3 (McKinney 1958). Respondent *671 argues that the decision in Ballard indicates that sincerity or the lack thereof is still the proper focus of inquiry in determining whether or not an individual was guilty under section 165.35 of the New York Penal Law (McKinney 1988). Respondent maintains that petitioner failed to establish that there was a lack of good faith on the part of the Millers. The court in Ballard did not indicate that the presence of good faith or the lack of good faith in the fortuneteller is determinative of whether an individual is guilty of the crime of fortunetelling. Instead, the court found that the defendant was guilty of the crime of fortunetelling because he, for a fee, claimed to have the power to exorcise evil. The Court concluded that sincerity, or the lack thereof, was not the focus of inquiry in fortunetelling cases. Therefore, section 899 of the New York Code of Criminal Procedure (McKinney 1958), and the cases decided under that statute are not relevant to this case. The Millers charged petitioner a fee to give petitioner advice on personal matters and to exorcise evil spirits. Petitioner gave contributions to the Millers for their church to rid petitioner of evil spirits. The Court *672 concludes that, under New York law, the taking of monies by the Millers from petitioner constitutes the crime of fortunetelling. Respondent contends that even though fortunetelling is a crime in New York, the crime of fortunetelling does not constitute the crime of theft. Respondent asserts that in order for the crime of fortunetelling to constitute the crime of theft, all the elements of larceny must be present. Respondent argues that the crime of fortunetelling fails to contain the necessary elements of larceny. Larceny is defined as a "felonious or fraudulent taking of personal property from the possession of another against his will or without his consent." 50 Am. Jur. 2d 175 (1970). Respondent emphasizes that larceny requires the element of intent by the perpetrator when larceny by false promise is at issue. Respondent contends that the Millers must have intended to deprive petitioner of his property or that the Millers must have intended to defraud petitioner and take his money, in order for the Court to decide that a theft occurred. Respondent also argues that there is no evidence to indicate that the Millers deliberately tried to deprive petitioner of his property through *673 the use of fraud. Respondent argues that petitioner testified that the Millers were running a Romanian Church. But petitioner provided no proof that the Millers were insincere in their professional belief that their practices would confer a benefit on him. Respondent asserts that for fraud to exist there must be present some deliberate artifice or deceitful practice to deprive a person of his property. 37 Am. Jur. 2d 18 (1968). Respondent argues that such deceitful practice should not be inferred merely by the happening of the event. Respondent contends that the payments made by petitioner were all voluntary. Petitioner believed that he would be helped by making these payments and since there is no evidence that he was not helped, there was no theft loss. According to respondent, there was no theft under New York law because there was no larceny or fraud committed by the Millers. Petitioner contends that the Millers did commit larceny or that the Millers did intend to deprive petitioner of his money. Petitioner argues that his filing of the police report for fortunetelling/grand larceny establishes that the paying of monies and giving of property to a fortuneteller constitutes *674 theft under the laws of the State of New York. Respondent's counterargument is that the filing of a complaint with the police is only an allegation of illegality by the complainant and in and of itself does not constitute proof of the commission of a crime involving theft or any other crime. Theft includes but is not limited to larceny, embezzlement, and robbery. Sec. 1.165-8(d), Income Tax Regs. Theft covers a broad field of illegality including "any criminal appropriation of another's property to the use of the taker, particularly including theft by swindling, false pretenses, and any other form of guile." Edwards v. Bromberg, 232 F.2d 107, 110 (5th Cir. 1956) (Fn. ref. omitted.). Under New York law, fortunetelling is treated as an offense relating to theft. Fortunetelling is listed under Article 165 as an offense relating to theft and is included under Title J which discusses offenses involving theft. Fortunetelling is: an inchoate theft offense involving a prevalent species of fraud whereby its practitioners, professing occult powers of prognostication, annually bilk a gullible public of many millions of dollars. Consequently, although many fortunetellers and tea leaf readers *675 may not fall within this thievery category, the offense is included in the instant "theft" Article, being graded a class B misdemeanor.
N.Y. Penal Law sec. 165.35 (McKinney 1975). The crime of fortunetelling requires that the fortuneteller claim or pretend to tell fortunes, or hold himself out as being able to use occult powers, to answer questions or give advice on personal matters or to exorcise, influence or affect evil spirits or curses, for a fee. The crime of fortunetelling may include all the elements of larceny where petitioner can establish that the fortuneteller intended to deprive her client of his property. However, it is not necessary to prove all the elements of larceny to prove that a crime of fortunetelling was committed. Whereas the crime of larceny requires that the defendant intend to deprive another of property, the crime of fortunetelling does not require that the fortuneteller intend to deprive another of his property. N.Y. Penal Law sec. 155.05 (McKinney 1975). Therefore, in cases where larceny cannot be proven because the intent to deprive the client of his property cannot be established, the Court may still decide that the crime of fortunetelling was committed. *676 Under New York law, a determination by the Court that the crime of fortunetelling was committed would result in a decision that the crime of theft was committed even though larceny cannot be established. Petitioner testified that the Millers intended to defraud him. The Millers convinced him to discontinue taking medication prescribed by his doctor. As a result, he became dependent upon the Millers until October 1984, at which time he started taking the medication again. Petitioner testified that the Millers told him to make contributions to their church in order to ward off evil spirits. Petitioner testified that there actually was no church. [4] *677 Petitioner testified that he finally decided in October 1984 that the Millers had no intention of helping him and that the Millers were stealing from him. Petitioner filed a police report in 1989 alleging that the crime of larceny was committed by the Millers. The testimony of petitioner alone does not establish that the Millers committed larceny. However, the fact that larceny cannot be proven does not prevent the Court from deciding that the Millers committed theft. The Millers received substantial sums of money and property from petitioner in return for their purported use of occult powers. The circumstances indicate that the Millers fraudulently represented to petitioner that they could help him with their occult powers only if he gave them large sums of money and property. Under New York law, such representations by a fortuneteller resulting in the receipt of the client's money constitutes the crime of fortunetelling, and such a crime constitutes theft. The fact that petitioner believed he would be helped by the Millers does not make this crime something less than a theft. A gullible person who gives money to fortunetellers in the belief that these fortunetellers will help him is still defrauded or swindled. Petitioner's illness may have contributed to his gullibility and failure to understand that he was being swindled. Theft is a broad term and includes theft by swindling, false *678 pretenses, and any other form of guile. Edwards v. Bromberg, 232 F.2d 107, 110 (5th Cir. 1956).The taking of monies by the Millers from petitioner is theft under any of these interpretations. The payments from petitioner to the Millers were voluntary, as respondent argues. However, such voluntary payments cannot be classified as gifts, as respondent contends. Petitioner expected something in return for those payments. Therefore, the payments were not gratuitous. We conclude that, under New York law, the crime of fortunetelling committed by the Millers constitutes the crime of theft. Respondent contends that petitioner did not discover that a theft occurred until 1985 because petitioner continued to make payments to the Millers in 1985, and, therefore, would not be entitled to a theft loss deduction in 1984, unless section 1311(a) applies. We conclude on this record that petitioner discovered the theft loss in 1984. Therefore, the Court holds that petitioner is entitled to a theft loss deduction in the year he discovered the theft, in 1984, for the amounts substantiated on his income tax return. Respondent contends that even if the Court decides that a theft loss occurred, petitioner's *679 records do not substantiate the amount of the alleged theft loss to the Millers. Respondent's determination in the statutory notice is presumed correct and petitioner has the burden of proving that such determination is erroneous. Welch v. Helvering, 290 U.S. 111, 115 (1933); Helvering v. Taylor, 293 U.S. 507 (1935). Respondent argues that the documentary evidence by which petitioner seeks to substantiate the amount of the claimed theft loss is not convincing. The withdrawals from his bank accounts, the alleged loan, and expenditures in no way prove who the recipient was. Respondent contends that the nature of the expenditures is more indicative of gifts or support involving a personal relationship with Celina Miller with whom he appears to have spent most of his time. Respondent also contends that petitioner's primary evidence that he suffered this theft loss was his self-serving testimony. Respondent argues that the Court need not accept a taxpayer's self-serving testimony, even if uncontradicted, if the Court finds the testimony unreasonable, improbable, or questionable. Lovell and Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972), affg. T.C. Memo. 1970-335; Ruark v. Commissioner, 449 F.2d 311, 312 (9th Cir. 1971), *680 affg. T.C. Memo. 1969-48. Petitioner contends that the documents he submitted as evidence prove that he made the withdrawals and used the money to make contributions to the Millers' church and to buy various items for the Millers. The record includes various documents provided by petitioner as proof of the payments made to the Millers and purchases made for the Millers. These documents included bank withdrawal slips, credit card charge slips, and receipts for various purchases. Even though some of the documents do not indicate that petitioner actually gave money to the Millers, the Court believes that petitioner's testimony is reasonable and probable. The documents do indicate that some of the purchases went to the Millers' address. The Court already determined that the payments and purchases are not in the nature of a gift. There is no evidence to indicate that the payments were to support Celina Miller. The Court concludes that petitioner has substantiated the amounts paid to the Millers and is entitled to the theft loss deduction in the amount of $ 19,187 in 1984. Respondent contends that petitioner has not substantiated the theft loss deduction in the amount of $ 3,500 on *681 the real estate transaction. Respondent argues that the record is devoid of any evidence in connection with this deduction. Therefore, the notice of deficiency in which the loss was disallowed is entitled to a presumption of correctness and the respondent should be sustained in full. Welch v. Helvering, 290 U.S. 111, 115 (1933); Helvering v. Taylor, 293 U.S. 507 (1935). The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable. * * * This is especially true where * * * the party failing to produce the evidence has the burden of proof * * *. [Citations omitted.]
Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).
Petitioner failed to offer any evidence to support this deduction. The Court concludes that petitioner failed to substantiate the deduction in the amount of $ 3,500 and, therefore, is not entitled to a theft loss deduction for that amount. Respondent determined that the entire amount of petitioner's underpayment for 1984 was attributable to negligence *682 and imposed additions to tax provided by section 6653(a). Section 6653(a)(1) provides for an addition to tax of 5 percent of the total underpayment for the year where any part of any underpayment in that year is due to negligence or intentional disregard of the rules and regulations. Commissioner v. Asphalt Products Co., 482 U.S. 117 (1987).Section 6653(a)(2) provides for an addition to tax equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of the rules and regulations. Petitioner bears the burden of proving that the underpayment was not attributable to negligence. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972);Rule 142(a). Negligence is defined as the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985).See also Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. 43 T.C. 168 (1964).
Respondent contends that petitioner's failure to include monies received from the Vacation Plan constituted negligence. Respondent determined that this amount was not included in the W-2 *683 wages for North Star Electrical Contracting N.Y.C. Corporation (North Star) and, therefore, the amount must be added to petitioner's gross income for 1984. In addition, petitioner claimed highly questionable theft losses for which he was able to produce minimal, if any, evidence of occurrence and amounts involved. Respondent argues that the imposition of the additions to tax for negligence is warranted. Petitioner concedes that he received $ 2,520 in income from the Vacation Plan in 1984. Petitioner now concedes that the $ 2,520 was not included in his wages, but argues that he was not negligent in the preparation of his return for the year in issue because he believed at that time this amount was included in the W-2 wages he reported from North Star. The Court has already held that petitioner proved his entitlement to the theft loss deduction in the amount of $ 19,187. Accordingly, there can be no negligence with respect to that item. The Court also holds that the amount of $ 2,520 which petitioner failed to include in income in 1984 was not due to negligence. However, petitioner failed to prove that the deduction claimed for the theft loss on the real estate transaction in *684 the amount of $ 3,500 was not due to negligence. Therefore, the Court holds that petitioner was negligent with respect to that item. Pursuant to section 6653(a)(1), petitioner is liable for an addition to tax of 5 percent of the total underpayment. In addition to the amount determined under section 6653(a)(1), and pursuant to section 6653(a)(2), petitioner is liable for an addition to tax of an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment which is attributable to negligence, and for the period beginning on the last date prescribed by law for payment of such underpayment and ending on the date of the assessment of the tax. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50% of the interest due on the portion of the underpayment attributable to negligence
2. Petitioner conceded that he failed to include $ 2,520 in wages from a vacation plan in income on his 1984 tax return. Respondent conceded that the substantial understatement addition to tax pursuant to section 6661(a) does not apply to the 1984 year.↩
3. Respondent did not raise the issue of whether or not petitioner had a reasonable prospect of recovery in the year the alleged theft was discovered.-↩
4. The record does not establish whether or not the Romanian Church actually existed. Such a finding is not necessary to the resolution of this case. The important fact that is established in the record is that the Millers persuaded petitioner that contributions to their church would ward off evil spirits that threatened him.