## COMMISSIONER OF INTERNAL REVENUE *v.* ASPHALT PRODUCTS CO., INC.

No. 86–1053.   Decided June 1, 1987*

*Together with No. 86–1054, *Asphalt Products Co., Inc.* v. *Commissioner of Internal Revenue*, also on petition for writ of certiorari to the same court.

PER CURIAM.

Asphalt Products Co. (APC) manufactures emulsified asphalt, a paving material containing oil refining residues, principally for sale to Tennessee county governments for use in highway construction. For reasons related to the rise in oil prices attending the 1973 Arab oil embargo, APC's 1974 year-end inventories and accounts receivable were substantially higher than in prior years. Because APC kept its books, and prepared its 1974 federal tax return, on a cash receipts and disbursements basis, its reported 1974 taxable income did not fully reflect these changes. APC's 1974 return also claimed a deduction of $1,103.04 for the expense of transporting two trucks from their place of purchase in Seattle to Tennessee. The trucks were driven to Tennessee by way of California, where they picked up two trailer-mounted waste water treatment plants bought by APC's shareholders in their individual capacities.

The Commissioner of Internal Revenue determined that, because of the increases in APC's inventories and accounts receivable, the company's traditional cash-basis bookkeeping did not "clearly reflect income," 26 U. S. C. § 446(b), for the 1974 tax year, and APC was therefore required to compute its 1974 income on an accrual basis. The Commissioner also disallowed the deduction for the expense of transporting the trucks and trailers, on the ground that it was a personal expense of the shareholders. After several other adjustments, the Commissioner recomputed APC's taxes to show a deficiency of $154,332.16.

The Commissioner further contended that APC's use of the wrong accounting method and its deduction of the truck transportation expenses constituted negligence, and it added

to the deficiency a penalty under 26 U. S. C. § 6653(a)(1), which then provided: "If any part of any underpayment . . . is due to negligence or intentional disregard of rules or regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment." (Section 6653 was amended in minor respects by the Tax Reform Act of 1986, Pub. L. 99–514, § 1503, 100 Stat. 2742; unless otherwise indicated, all further references are to the pre-1986 statute.) The penalty totaled $7,716.61 — 5% of the full alleged underpayment of $154,332.16.

In the Tax Court, APC stipulated that the truck transportation expenses were not properly deductible, unsuccessfully contested the requirement that it use accrual accounting, and successfully contested certain other determinations, resulting in a recalculated deficiency of $133,248.69 — almost all of which was due to the change in accounting methods. The Tax Court concluded that APC's use of cash-basis accounting was nonnegligent, but affirmed the Commissioner's finding that APC had negligently deducted the truck transportation expenses. It thus added to APC's tax a negligence penalty of $6,943.37, computed as before by reference to the full amount of the deficiency (adjusted for carryback credits, see 26 U. S. C. §§ 6211, 6653(c)(1)).

The Court of Appeals for the Sixth Circuit affirmed, over a dissent, the Tax Court's determination that APC was required to use accrual accounting, and unanimously (albeit with little enthusiasm) affirmed the finding that the deduction for truck transportation expenses was negligent. 796 F. 2d 843 (1986). APC has petitioned for certiorari on those two issues in No. 86–1054, and we deny that petition. Accordingly, for purposes of this opinion we accept, without approving, the Commissioner's finding of negligence. The Court of Appeals reversed the Tax Court's imposition of the negligence penalty on the full amount of the deficiency, concluding that the penalty "should be applied only to that portion of the deficiency attributable to the disallowed deduc-

tion." *Id.*, at 850. The Commissioner has petitioned for certiorari on that issue in No. 86–1053. Because this holding is in apparent conflict with *Abrams* v. *United States*, 449 F. 2d 662 (CA2 1971), and is in obvious conflict with the plain language of the statute, we grant certiorari in No. 86–1053 and reverse.

Section 6653(a)(1) could not be clearer. If "any part of any underpayment" is due to negligence, the Commissioner shall add to the tax a penalty of "5 percent of the underpayment." It is impossible further to explain the statute without merely repeating its language—the penalty is imposed on "the underpayment," *not* on the "part of [the] underpayment" attributable to negligence. By contrast (if contrast is thought necessary), the very next paragraph of the statute, § 6653(a)(2) (added in 1981, see Pub. L. 97–34, § 722(b)(1), 95 Stat. 342), limits the 50% penalty on interest due on negligent underpayments to "the portion of the underpayment . . . which is attributable to the [taxpayer's] negligence." The section imposing interest penalties on fraudulent underpayments contains the same proviso, § 6653(b)(2)(A), as does (after the 1986 Tax Reform Act) the provision for direct penalties on fraudulent underpayments. See § 1503(b)(1)(A), 100 Stat. 2742 ("If any part of any underpayment . . . is due to fraud, there shall be added to the tax . . . 75 percent of the portion of the underpayment which is attributable to fraud"). As the Court of Appeals for the Second Circuit held in *Abrams* v. *United States:* "It is evident that it was intended that the five percent was to be assessed not just against that segment of the deficiency due to negligence but against the entire amount. The language is clear and leads to no other interpretation." 449 F. 2d, at 664.

The taxpayers in *Abrams* argued "that a literal application of the statute could lead to absurd results where a comparatively insignificant item of income is negligently omitted," *ibid.*, and the court in *Abrams* expressly reserved judgment on that situation. *Ibid.* ("That case is not before us on this

appeal and we therefore express no opinion whatever as to its proper disposition if it should ever arise"). The Court of Appeals in this litigation relied on that reservation, and on the absence of any "egregious attempts [by APC] to avoid the payment of taxes," 796 F. 2d, at 849, to distinguish *Abrams*, concluding that the Commissioner's construction of the statute lets "the tail wag the dog." 796 F. 2d, at 850; *ibid.* (Nelson, J., concurring in part and dissenting in part) ("Where the taxpayer is subject to a penalty only because of the negligent omission of a comparatively insignificant item of income, and the Commissioner also asserts that there is a large underpayment not claimed to be due to negligence, I agree with the court that it would be absurd to let the Commissioner calculate the negligence penalty by applying the statutory percentage to the sum of the negligent and non-negligent underpayments"). This was error. Judicial perception that a particular result would be unreasonable may enter into the construction of ambiguous provisions, but cannot justify disregard of what Congress has plainly and intentionally provided. Given the Government's plausible interest in deterring negligent tax preparation and given the statute's explicit limitation of other penalties to the amount of the negligent or fraudulent underpayment, no conclusion can be drawn from the provision here at issue except that Congress desired to impose a modest penalty (5%) upon underpayments any part of which was attributable to negligence of the taxpayer. It is not our assigned role to alter that disposition.

The decision of the Court of Appeals limiting the amount of the negligence penalty is

*Reversed.*

JUSTICE MARSHALL, concurring in part and dissenting in part.

Once again the Court decides a case summarily without benefit of full briefing on the merits of the question decided. As I noted recently, *Montana* v. *Hall*, 481 U. S. 400, 405–406 (1987) (dissenting from summary disposition), this Court's

Rules governing the filing of petitions for certiorari instruct the parties to address whether plenary consideration of the case would be appropriate, and do not encourage detailed discussions of the merits. In this case, adhering to the admonition in this Court's Rule 22.2 that a response be "as short as possible," respondent filed a nine-page brief in opposition to the petition for certiorari, of which only *four pages* dealt with the issue of the proper construction of 26 U. S. C. § 6653(a)(1). It is, in my view, unfair to decide a case such as this without first permitting the litigants to brief in full the merits of the issues decided.

The wisdom of summary disposition of this case is particularly doubtful. The legislative history of the Tax Reform Act of 1986, not mentioned by the Court, indicates that Congress considered carefully the scheme for imposing negligence penalties, see H. R. Conf. Rep. No. 99–841, pt. 2, pp. 779–782 (1986), and expressly disapproved the decision of the Court of Appeals in this case. *Id.*, at 782, n. 3. Because Congress has definitively stated that the decision below is not to be followed in cases arising under the 1986 Act, this case, if left undisturbed, would have negligible precedential value. Moreover, courts considering the issue even with regard to tax years before 1987, while not bound by the current Congress' view of the intent of a previous Congress, would probably pay some heed to the congressional view of the proper reading of § 6653(a)(1).*

Under the circumstances it appears the reason for summarily reversing the judgment of the Court of Appeals in this case is simply that the majority perceives it to be wrong. But this Court routinely denies petitions for certiorari seeking review of decisions that, on the face of the petitions or the

---

*Indeed, petitioner relies on this legislative history to support his contention that the decision of the Court of Appeals in this case was erroneous, Pet. for Cert. 6–8, and suggests that the Court vacate and remand the decision below for further consideration in light of the Conference Report. *Id.*, at 8, n. 4.

petitions and responses, appear to be wrong. I can discern no intelligible principle distinguishing from that large number of cases those the Court chooses to decide without first giving the parties the opportunity to brief the merits of the case in full, and giving itself the opportunity to ensure that its initial impression is borne out by more thoughtful consideration. That our jurisdiction is discretionary should not lead us to be arbitrary in its exercise.

I would not decide this case without first giving the parties the opportunity to file briefs on the merits. Accordingly, I dissent from the Court's summary disposition in No. 86–1053. Because I too would deny the petition for certiorari in No. 86–1054, I concur in that part of the Court's *per curiam* opinion.

JUSTICE BLACKMUN, concurring in part and dissenting in part.

I agree with the Court in its denial of the petition for certiorari in No. 86–1054. I dissent from its summary reversal of the judgment of the Sixth Circuit on the negligence penalty issue. I do not agree that the correct result is so obvious and the Court of Appeals so clearly in error that summary reversal is warranted. I hope the Court's action is not due to an innate reluctance to review a federal income tax case. After all, United States Courts of Appeals have reached conflicting conclusions on the issue, and income tax law often has its special vagaries. I would grant certiorari in No. 86–1053 and give that case plenary consideration.