In re Rose **HARPER–ELDER**, Debtor.

Bankruptcy No. 94–01280.

United States Bankruptcy Court,
District of Columbia.

July 27, 1995.

Reed P. Sexter, Barry Levine, Dickstein, Shapiro & Morin, Washington, DC, E. Macey Russell, Riemer & Braunstein, Boston, MA, for Creditor.

Wendell W. Webster, Washington, DC, for debtor.

### DECISION ON DEBTOR'S MOTION TO DISMISS

S. MARTIN TEEL, Jr., Bankruptcy Judge.

This matter comes before the court on a motion by the debtor, Rose Harper–Elder, to dismiss her chapter 13 case in the face of a motion to convert filed by a creditor, Robert Lee Elder ("Elder"). Also filing separate motions to dismiss the debtor's case are a creditor, Mershon, Sawyer, Johnston, Dunwody & Cole ("Mershon Sawyer"), and the Chapter 13 Trustee ("Trustee").

The relevant facts of this case are as follows:

The debtor filed her voluntary chapter 13 petition under the Bankruptcy Code (11 U.S.C.) on December 7, 1994. The debtor filed an amended plan of reorganization on April 28, 1995. On May 19, 1995, the court denied confirmation of the debtor's amended plan because the court found it failed to satisfy the requirement under 11 U.S.C. § 1325(a)(4) that creditors receive under the plan more than they would under a chapter 7 liquidation. At the hearing Elder moved to convert the debtor's case for cause under 11 U.S.C. § 1307(c), a motion which the court deferred ruling on until after the confirmation hearing. Following the denial of confirmation, the debtor moved to dismiss her case under 11 U.S.C. § 1307(b). The Trustee and Mershon Sawyer also moved to dismiss the case under 11 U.S.C. § 1307(c) based on the denial of confirmation.

Elder renewed his prior oral motion to convert this case under 11 U.S.C. § 1307(c) based on allegations of bad faith by the debtor. Specifically, Elder's allegations of fraud

and bad faith arise out of alleged misstatements of known facts and material omissions in the debtor's bankruptcy schedules listing her assets filed in her bankruptcy case.

*DISCUSSION*

The debtor moves to dismiss her case under 11 U.S.C. § 1307(b), which provides that:

On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

Elder, along with Mershon Sawyer and the Trustee, relies on 11 U.S.C. § 1307(c), which provides in relevant part that:

Except as provided under subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including . . .

(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan. . . .

The parties have argued over whether the court has the discretion to consider a pending motion to convert the debtor's chapter 13 case for cause when the debtor has filed a request for voluntary dismissal under § 1307(b). This is an issue about which the courts are clearly divided. Some courts have held that the debtor's right to dismiss is an absolute right and that the court has *no* discretion to consider the creditor's pending motion to convert under § 1307(c) when faced with the debtor's motion to dismiss under § 1307(b). *See In re Beatty,* 162 B.R. 853, 856–57 (9th Cir. BAP 1994); *In re Gillion,* 36 B.R. 901, 904–906 (E.D.Ark.1983); *In re Sanders,* 100 B.R. 338 (Bankr.S.D.Ohio 1989); *In re Looney,* 90 B.R. 217 (Bankr. W.D.Va.1988); *In re Rebeor,* 89 B.R. 314, 322 (Bankr.N.D.N.Y.1988); *In re Turiace,* 41

B.R. 466 (Bankr.D.Or.1984); *In re Merritt,* 39 B.R. 462, 465 (Bankr.E.D.Pa.1984); *In re Benediktsson,* 34 B.R. 349 (Bankr.W.D.Wash. 1983); *In re Hearn,* 18 B.R. 605 (Bankr. D.Neb.1982); *see also In re Nash,* 765 F.2d 1410, 1413 (9th Cir.1985) (dicta). The courts reason that "[t]his view comports with the plain language of section 1307([b]) which states that the court 'shall' dismiss the case upon the debtor's request as well as the purposes of Chapter 13 and the voluntary nature of the relief under that Chapter." *See In re Beatty,* 162 B.R. at 857 (citations omitted).

In contrast, other courts have held that they *do* have the discretionary authority to grant a pending motion to convert a chapter 13 case in the face of a debtor's competing request for dismissal, particularly where there is evidence of improper conduct by the debtor. *See In re Gaudet,* 132 B.R. 670, 673–76 (D.R.I.1991); *In re Vieweg,* 80 B.R. 838, 840–41 (Bankr.E.D.Mich.1987) (bad faith); *In re Powers,* 48 B.R. 120 (Bankr.M.D.La. 1985); *In re Jacobs,* 43 B.R. 971 (Bankr. E.D.N.Y.1984) (bad faith); *In re Whitten,* 11 B.R. 333, 340 (Bankr.D.D.C.1981) (dicta; bad faith); *see also In re Tatsis,* 72 B.R. 908, 910 (Bankr.W.D.N.C.1987) (dicta, motion to dismiss withdrawn); *In re Zarowitz,* 36 B.R. 906 (Bankr.S.D.N.Y.1984) (holding absolute right to dismiss but noting in dicta possible exception if bad faith found). The courts reason that harmonizing § 1307(b) and (c) leads to the conclusion that Congress could not have intended to "give the debtor unfettered power to prevent conversion under § 1307(c) by simply filing a motion to dismiss whenever conversion was requested." *See In re Gaudet,* 132 B.R. at 676; *In re Vieweg,* 80 B.R. at 841. Thus, these courts hold that a hearing should be held to consider the merits of both motions, and the court should act in accordance with the best interest of creditors and the estate. *See In re Vieweg,* 80 B.R. at 841.

This more liberal interpretation has also been followed by the Courts of Appeals for the Fifth and the Eighth Circuits considering

the identical language in § 1208(b)[1] under chapter 12, the family farmer provisions of the Code. *See In re Graven*, 936 F.2d 378, 384–87 (8th Cir.1991); *In re Foster*, 121 B.R. 961 (N.D.Tex.1990), *aff'd without op.*, 945 F.2d 400 (5th Cir.1991), *cert. denied*, 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 136 (1992); *see also In re Tyndall*, 97 B.R. 266 (Bankr. E.D.N.C.1989). Faced with the creditor's motion to convert for fraud under § 1208(d),[2] these courts of appeals concluded that the bankruptcy court has the authority to convert a case to chapter 7 upon a showing of fraud even though the debtor has moved for dismissal under subsection (b). *See In re Graven*, 936 F.2d at 385. Citing cases analyzing § 1307(b), the *Graven* court specifically rejected the contention that the identical "shall" language in § 1208(b) mandated immediate dismissal, stating

> Our holding on the interaction of subsections (b) and (d) does not conflict with the express language of subsection (b). Nothing in subsection (b) requires that a court act immediately upon a debtor's request for a voluntary dismissal. Once fraud is found, the provisions of section 1208(d) are triggered and the court has the authority, under subsection (d), to dismiss the case or convert it to Chapter 7.

*Id.* at 385–86 (citation omitted).

The court concludes that the debtor's right to a dismissal under § 1307(b) is absolute. At the outset, the court wants to make clear that the courts of appeals decisions interpreting § 1208(b) are not distinguishable from this chapter 13 proceeding. The heart of this dispute is whether the language under § 1307(b) is mandatory—in essence,

whether "shall" really means "shall." If shall does mean shall, then the case must be dismissed before the court even considers any alternative motions. Interpreting identical language in § 1208(b), the courts of appeals ruled that shall does *not* mean shall, granting the bankruptcy court the discretion to consider other currently pending motions. That the other pending motion to convert was based on the narrower chapter 12 standard of fraud does not change the significance of the courts' ruling. The bottom line is that the courts ruled that dismissal is not mandatory and the debtor's right to such was not absolute. Accordingly, the court will not attempt to distinguish these decisions. If they were correctly decided, then the debtor's right to dismissal under § 1307(b) is not absolute.[3]

However, this court disagrees with these rulings. Although not lightly disagreed with, the court concludes that the courts of appeals have ignored the clear language of the statute. *See United States v. Ron Pair Ent.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (language of the Code is to be applied literally except where "demonstrably at odds with the intentions of its drafters"). The clear language of § 1307(b) provides that the court "shall" dismiss the debtor's chapter 13 case upon the debtor's request, a request which the debtor may make "at any time"[4] by motion under F.R.Bankr.P. 1017(d) and 9013. Furthermore, no waiver of the dismissal right under subsection (b) is enforceable. The only limitation on the debtor's right of dismissal, clearly spelled out in subsection (b), provides

---

1. Section 1208(b) reads:
   On request of the debtor at any time, if the case has not been converted under section 706 or 1112 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

2. Section 1208(d) is *not* identical to § 1307(c), providing instead:
   On request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter or convert a case under this chapter to a case under chapter 7 of this title upon a showing that the debtor has committed fraud in connection with the case.

3. The only distinction between the situation in chapter 13 and chapter 12 is that no involuntary chapter 7 or 11 petition could be filed against the family farmer debtor in chapter 12, *see* § 303(a), while an involuntary chapter 7 or 11 petition could be filed against the debtor in chapter 13, as long as he is not a family farmer. The court finds this is too thin a reed to divine Congress's intentions, however.

4. This language clarifies that the timing of a motion under subsection (b) is not subject to the same restriction of subsection (d) which restricts requests for conversion to chapters 11 or 12 to the pre-confirmation period.

that the debtor's request will not be granted "if the case has been converted under section 706, 1112, or 1208 of this title," which prevents the debtor from returning to a chapter she has already been in. Based on the foregoing the court joins other courts in concluding that "[f]rom the plain and ordinary meaning of the language contained in § 1307(b) ... a Chapter 13 debtor has an absolute right to dismiss his action prior to the conversion of such proceeding to a Chapter 7 liquidation proceeding." *See In re Gillion,* 36 B.R. at 905; *In re Beatty,* 162 B.R. at 857.

Such a conclusion is in harmony with the "design of the statute as a whole and ... its object and policy." *See Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990). The most compelling reason for the court's conclusion that subsection (b) was intended to be mandatory is that under the contrary conclusion, subsection (c) would render the absence in subsection (b) of any condition to dismissal a nullity. Under subsection (c), a party in interest may move for conversion or dismissal for "cause." In contrast to (b), a motion for conversion or dismissal under (c) is treated as a contested matter under F.R.Bankr.P. 1017(d) and 9014 and may only be granted after notice and hearing. If (b) is not mandatory, as the courts of appeals conclude, then the court is free to hold a hearing to consider the creditor's pending motion to convert in conjunction with the debtor's motion to dismiss. The impact on the debtor of considering both motions together, however, is to allow a creditor to oppose a request for dismissal under subsection (b), when subsection (b) plainly does not allow any opposition to enter into the court's decision on the debtor's request for dismissal and to elevate the debtor's burden for dismissal to the level provided by (c), of showing that the dismissal is in the best interest of creditors and the estate. Nowhere in subsection (b) is there any require-ment that the debtor's case will be dismissed only if it is in the best interest of creditors and the estate. Such a result would render subsection (b)'s lack of restriction absolutely meaningless, which is contrary to traditional statutory interpretation. *See Mail Order Ass'n of America v. U.S. Postal Serv.,* 986 F.2d 509, 515 (D.C.Cir.1993) (statute must be construed, where possible, so that no provision is rendered "inoperative or superfluous, void or insignificant").

The courts declaring subsection (b) non-mandatory base their decision on a need to "harmonize" subsections (b) and (c). *See In re Graven,* 936 F.2d at 385–86; *In re Gaudet,* 132 B.R. at 676; *In re Vieweg,* 80 B.R. at 841. Contrary to the conclusion of these courts, this court concludes that the only way to harmonize these subsections without rendering subsection (b) nugatory is by concluding that (b) is mandatory. The above cited courts have argued just the opposite position, concluding that if subsection (b) is mandatory, subsection (c) would be rendered ineffective and the court would be powerless to prevent debtor abuses of the bankruptcy system, such as serial filings. The court disagrees that it is necessary to limit the debtor's right to dismiss in order to prevent abuse by debtors. First, as discussed above such a conclusion is not supported by the plain language of the statute. And absent support in the plain language, the court has no authority to tinker with the enforcement of the bankruptcy laws. Simply because the courts are concerned about abuse is not an excuse to rewrite the statute.

■ Second, because the mandatory right to dismiss under (b) is granted only by motion, the court retains jurisdiction sufficient to impose any proper sanctions on the debtor for improper behavior under 11 U.S.C. §§ 349(a)[5] and 109(g)[6] and F.R.Bankr.P.

---

5. 11 U.S.C. § 349, titled "Effect of dismissal," provides:

(a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, *except as provided in section 109(g) of this title.*
(Emphasis added.)

6. 11 U.S.C. § 109, titled "Who may be a debtor," provides:

(g) Notwithstanding any other provisions of this section, no individual or family farmer may be a debtor under this title who has been

9011 prior to dismissal. *See In re Dilley*, 125 B.R. 189 (Bankr.N.D.Ohio 1991). This ability to impose sanctions is effective to prevent abusive acts by debtor. Significantly, §§ 349(a) and 109(g) are intended to prevent serial filings by a debtor by permitting the court to restrict the debtor's ability to file a case within 180 days after dismissal where the debtor has voluntarily dismissed her case after a motion for relief from the automatic stay has been filed. That the court may impose sanctions on the debtor prior to dismissal does not, however, lead to the conclusion assumed by some courts that the court may also consider a creditor's motion to convert. *See In re Gaudet*, 132 B.R. at 676. Rather, unlike the motion to convert, the court's imposition of sanctions represents an exercise of the court's inherent power to police the litigants, which is clearly contemplated by § 109(g) and in no way impinges on the debtor's absolute right to dismiss. This stands in stark contrast to the motion to convert which directly conflicts with the debtor's right to dismiss.

■ The third reason why the debtor's absolute right to dismiss is not likely to lead to abuse by the debtor is that the debtor does not benefit in any real sense nor are the creditors harmed by such a dismissal. By dismissing her case, the debtor "indicates that [s]he is prepared to limit [her] rights and remedies to those available in state court." *See In re Hearn*, 18 B.R. at 606. Under § 349, by voluntarily dismissing her case, the debtor loses the protection of the automatic stay, *see* § 362(c)(2)(B), forfeits her right to a discharge in that case, and "reverses, to the extent possible, what has transpired during the bankruptcy.... The basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." *See In re Merritt*, 39 B.R. at 464 (quoting the legislative history of 11 U.S.C. § 349) (citation omitted).

Further, there is no danger of a creditor's losing a cause of action by the running of any statute of limitations. Section 108(c) of the Code protects creditors against the possibility of a debtor's filing a Chapter 13 petition and later using his dismissal right after the statute has run. That provision tolls a statute of limitation on a civil cause of action still viable on the date of filing until 30 days after notice of the event which terminates the automatic stay, here the debtor's 1307(b) dismissal. H.Rep. 95–595, 95th Cong., 1st Sess. (1977) 318.

*In re Hearn*, 18 B.R. at 606–607.

The only prejudice to creditors that the court can foresee of the debtor's absolute right to dismiss is the loss of the preference period under § 547 and the fraudulent transfer period under § 548. When a voluntary petition is filed, the trustee may move to avoid any preferential transfers made by the debtor within 90 days prior to the petition or within one year prior to the petition if the alleged transfer was made to an insider. *See* § 547(b)(4). Similarly, under § 548 the trustee may move to avoid any fraudulent transfers made by the debtor within one year prior to the petition. If the debtor exercises her absolute right to dismiss in response to a potential preference or fraudulent transfer action, the creditors could then file an involuntary petition against the debtor to allow a trustee to recover preferences or fraudulent transfers. However, the original petition date for measuring the preference and fraudulent transfer period would be lost by the dismissal, which would limit the trustee's reach to the maximum one year period measured from the date of the involuntary petition, rather than the date of the chapter 13 petition. One could envision a debtor, who is pursued by creditors ready to file an involuntary petition, filing a voluntary chapter 13 petition and then dismissing the chapter 13 case in the face of a preference or fraudulent transfer action in order to delay beginning of the period as long as possible, thus enabling certain preferential payments and fraudulent transfers to escape recovery.

a debtor in a case pending under this title at any time in the preceding 180 days if ...
(2) the debtor requested and obtained the voluntary dismissal of the case following the

filing of a request for relief from the automatic stay provided by section 362 of the title.

The court does not find the above hypothetical grounds to limit the debtor's right to voluntary dismissal, however, because the creditors could preserve their rights by filing an involuntary chapter 7 or 11 petition against the debtor in response to the debtor's voluntary chapter 13 petition. Faced with competing voluntary and involuntary petitions the court would rightfully afford the petitioners of the involuntary petition the opportunity to demonstrate prejudice before dismissing or consolidating the cases pursuant to F.R.Bankr.P. 1015(a).[7] *See In re Descorp, Inc.*, 1992 WL 29833, 1992 U.S.Dist. LEXIS 1825 (E.D.Pa. Feb. 12, 1992); *In re Westover Hills Ltd.*, 46 B.R. 300 (Bankr. D.Wy.1985). Accordingly, based on the above analysis, the court sees little potential for harm in the chapter 13 debtor's absolute right to dismiss.

Finally, the court concludes that the debtor's absolute right to dismiss her chapter 13 petition is directly in harmony with the purpose of chapter 13. Chapter 13 was intended to be purely voluntary chapter, as demonstrated by § 303(a) which provides that a chapter 13 case may not be commenced involuntarily. Furthermore, debt repayment must be on the debtor's terms, albeit meeting certain statutory criteria, because under § 1321 only the debtor may file a chapter 13 plan. Moreover, restricting the debtor's unqualified right of dismissal under chapter 13 would mark a significant departure from the law under the former Bankruptcy Act. Under Section 666 of the Bankruptcy Act and Rule 13–112(a)(2), the court could not convert a case from Chapter XIII to Chapter VII without the debtor's written consent. "This freedom to choose between liquidation and debt adjustment was preserved in the Bankruptcy Code. While consent is no longer required to effect a conversion, [the debtor] does have a guaranteed right of dismissal." *See In re Hearn*, 18 B.R. at 606.

An analysis of the chapter 13 provisions has led one court to conclude that

the inescapable conclusion is that in order to foster and promote the use of Chapter 13 proceedings, Congress perceived that a debtor should be afforded the uninhibited freedom to avoid liquidation if he elects to do so before the conversion of his Chapter 13 proceeding.

*See In re Gillion*, 36 B.R. at 905. Congress has provided a method for placing reluctant debtors into liquidation—filing an involuntary petition under § 303. This section, however, has certain requirements that the creditors must comply with beyond a simple showing of "cause." It would be unfair to the debtor and counter to the spirit of the Code for the court to permit the creditor to avoid compliance with the involuntary petition provisions by utilizing the conversion language of chapter 13 to force the reluctant debtor into liquidation.

For all these reasons the court concludes that the debtor's right to dismiss her chapter 13 case under § 1307(b) is an absolute right and that the court is required to grant her motion requesting dismissal.

---

7.  F.R.Bankr.P. 1015(a) provides:
    CASES INVOLVING THE SAME DEBTOR. If two or more petitions are pending in the same court by or against the same debtor, the court may order consolidation of the cases.