In re Billy PATTON, Rachelle
Patton, Debtors.

Bankruptcy No. 97–30172.

United States Bankruptcy Court,
E.D. Tennessee.

May 29, 1997.

Gail F. Wortley, Knoxville, TN, for Debtors.

Maurice K. Guinn, Gentry, Tipton, Kizer & McLemore, P.C., Knoxville, TN, for Finley W. Reed, Jr., Conservator for Edna Mae Pardue.

Gwendolyn M. Kerney, Knoxville, TN, Chapter 13 Trustee.

## *MEMORANDUM*

RICHARD S. STAIR, Bankruptcy Judge.

The Debtors, Billy and Rachelle Patton, filed a Chapter 13 petition on January 14, 1997. Several parties, including the Chapter 13 Trustee, objected to confirmation of the Debtors' plan. One such party, Finley W. Reed, Jr., conservator for Edna Mae Pardue, also filed a Motion to Dismiss or Convert Case to Chapter 7 (Motion) on March 3, 1997.[1] By a March 21, 1997 scheduling order, the court set an April 30, 1997 hearing on confirmation of the Debtors' plan, on the objections to confirmation, and on the Motion. On March 27, 1997, the Debtors filed a First Amendment to Debtors' Chapter 13

Plan. On April 24, 1997, the Debtors filed a Second Amendment to Debtor's [sic] Chapter 13 Plan. As of the April 30, 1997 hearing, all parties objecting to confirmation, with the exception of Finley W. Reed, Jr., had withdrawn their objections. The April 30, 1997 hearing was adjourned to May 7, 1997. On May 6, 1997, the Debtors filed a Motion to Dismiss. At the May 7, 1997 hearing, the Debtors argued that they have an absolute right to dismiss that the court must honor. To the contrary, Finley W. Reed, Jr., argued that the Debtors' right to dismissal is not absolute once a motion requesting conversion is filed.[2] Accordingly, the court is called upon to resolve the issue of whether the Debtors have an absolute right to dismiss their Chapter 13 case notwithstanding the pending Motion filed by Finley W. Reed, Jr.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (L) (West 1993).

### I

█ The issue before the court arises from the tension between a debtor's right to dismiss a Chapter 13 case under the authority of 11 U.S.C.A. § 1307(b) (West 1993) and a creditor's right to seek conversion of the case under the authority of 11 U.S.C.A. § 1307(c) (West 1993). These subsections provide, in material part:

> On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter.

11 U.S.C.A. § 1307(b) (West 1993).

> [O]n request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title ... for cause[.]

11 U.S.C.A. § 1307(c) (West 1993). When confronted with competing motions in a Chapter 13 case that has not previously been

---

1. By his Motion, Finley W. Reed, Jr., "requests the Court dismiss or convert to Chapter 7 the debtors' case...." Furthermore, in the Joint Statement of Issues filed on April 18, 1997, the parties stipulate one of the issues to be resolved by the court as follows: "Is there cause to dismiss or convert the debtors' case to chapter 7, 11 U.S.C. § 1307(c)?" Mr. Reed subsequently abandoned his request for dismissal and now

seeks only conversion of the Debtors' case to Chapter 7. The court will accordingly consider the Motion solely as a request by Mr. Reed for conversion of the Debtors' Chapter 13 case to Chapter 7. However, *see infra* note 3.

2. *See supra* note 1.

converted, "shall" courts dismiss the case at the debtor's request under the authority of § 1307(b) or "may" they, notwithstanding the debtor's request, convert the case to Chapter 7 under the authority of § 1307(c)? Courts are divided over the issue. *In re Casteel,* 207 B.R. 185, 186–87 (Bankr.E.D.Ark.1997) (collecting cases); *In re Greenberg,* 200 B.R. 763, 767 (Bankr.S.D.N.Y.1996) (collecting cases); *In re Harper–Elder,* 184 B.R. 403, 404 (Bankr.D.D.C.1995) (collecting cases).

## II

When construing the provisions of a statute, it is the duty of the judiciary to effectuate the will of Congress. *Negonsott v. Samuels,* 507 U.S. 99, 103–04, 113 S.Ct. 1119, 1122, 122 L.Ed.2d 457 (1993). This process begins with the language of the statute. *Bailey v. United States,* —— U.S. ——, ——, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995) (citing *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240–42, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)); *United States v. Alvarez–Sanchez,* 511 U.S. 350, 356–57, 114 S.Ct. 1599, 1603, 128 L.Ed.2d 319 (1994) (citing *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 252–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992)). Courts must first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.,* —— U.S. ——, ——, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997). In the absence of express legislative history to the contrary, further inquiry is prohibited "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Id.* (quoting *Ron Pair Enters., Inc.,* 489 U.S. at 240, 109 S.Ct. at 1030); *accord Reves v. Ernst & Young,* 507 U.S. 170, 176–78, 113 S.Ct. 1163, 1169, 122 L.Ed.2d 525 (1993); *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 474–76, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 107–09, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). To determine whether the statutory language is plain and unambiguous, courts are to consider "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson,* —— U.S. at ——, 117 S.Ct. at 846 (citing *Cowart,* 505 U.S. at 474–76, 112 S.Ct. at 2594–95; *McCarthy v. Bronson,* 500 U.S. 136, 138–40, 111 S.Ct. 1737, 1740, 114 L.Ed.2d 194 (1991)).

Looking to the language employed in subsections (b) and (c) of § 1307, there is no ambiguity. Subsection (b) plainly establishes that if a debtor, at any time, moves to dismiss a case that has not previously been converted, then the court "shall" dismiss the case. The term "shall" is unambiguously understood to impose a mandatory requirement. *Anderson v. Yungkau,* 329 U.S. 482, 484–86, 67 S.Ct. 428, 430, 91 L.Ed. 436 (1947). Subsection (c) plainly establishes that the court, after notice and a hearing, "may" convert a Chapter 13 case for "cause" upon request of a party in interest or the United States Trustee.[3] The term "may" is unambiguously understood to create a permissive option. *Id.* Nevertheless, the statutory scheme set forth in § 1307 is not consistent. In the event of competing motions filed under subsections (b) and (c), one subsection will inevitably prevail at the expense of rendering the other subsection a nullity. If the court exercises its discretion to grant the creditor's motion to convert, then subsection (b) is rendered a nullity because the court cannot grant the debtor's motion to dismiss even though subsection (b) requires the court to do so. *Harper–Elder,* 184 B.R. at 406. On the other hand, if the court must grant the debtor's motion to dismiss, then subsection (c) is rendered a nullity because the court does not possess the option to convert the case for cause even though subsection (c) unambiguously establishes such option. *Molitor v. Eidson (In re Molitor),* 76 F.3d 218, 220 (8th Cir.1996); *In re Howard,* 179 B.R. 7, 10 (Bankr.D.N.H.1995); *Gaudet v. Kirshenbaum Investment Co., Inc. (In re Gaudet),* 132 B.R. 670, 676 (D.R.I. 1991). The language that comprises subsec-

---

**3.** Actually, § 1307(c), by its terms, affords the court three options in disposing of a motion requesting conversion: it "may" grant the motion and convert the case to Chapter 7; it "may" grant the motion and dismiss the case; or it "may" deny the motion thereby retaining the case in Chapter 13. *See* Collier on Bankr. ¶ 1307.04 (15th ed. rev.1997).

tions (b) and (c) is not ambiguous, but it is inconsistent within the context of competing motions under the two subsections. *See In re Looney,* 90 B.R. 217, 217–18 (Bankr. W.D.Va.1988) ("An analysis of the two subsections discloses that they are not designed to accomplish a singular and common purpose. On the contrary, each is intended to accomplish an objective, separate and apart from the other."). As such, the court must determine which subsection Congress intended to control under the circumstances.

### Step 1: Plain Language Analysis

The plain language of subsection (b) establishes that courts "shall" dismiss the Chapter 13 case on a debtor's motion. The only limitation that Congress placed upon this mandatory directive concerns a case that was previously converted from Chapters 7, 11, or 12. *Harper–Elder,* 184 B.R. at 405–06. Not only does such a limitation establish that dismissal is mandatory under all other circumstances, but it also demonstrates that Congress was mindful of limitations on a debtor's right to dismiss and knew how to express such limitations that it deemed appropriate. *Greenberg,* 200 B.R. at 768. Based upon the plain language of subsection (b), the court concludes that Congress intended a debtor's dismissal motion to prevail over a creditor's competing motion to convert.

### Step 2: Legislative History

Even if the plain language of § 1307 is not conclusive as to the issue, the legislative history is. If the language of a statute does not plainly reveal the intent of the legislature, courts must next look to the legislative history of the statute. *Toibb v. Radloff,* 501 U.S. 157, 161–63, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991); *Blum v. Stenson,* 465 U.S. 886, 896–98, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). The legislative history to § 1307 provides in material part:

> Subsections (a) and (b) confirm, *without qualification,* the rights of a chapter 13 debtor to convert the case to a liquidating bankruptcy case under chapter 7 of title 11, at any time, or to have the chapter 13 case dismissed. Waiver of any such right

is unenforceable. Subsection (c) specifies various conditions for the exercise of the power of the court to convert a chapter 13 case to one under chapter 7 or to dismiss the case.

S. REP. No. 95–989, at 141 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5927 (emphasis added).

> Subsection (a) of section 1307 gives the debtor an absolute right of conversion to a liquidation case at any time.
>
> Subsection (b) requires the court, on request of the debtor, to dismiss the case if the case has not already been converted from chapter 7 or 11.
>
> Subsection (c) permits the court to convert the case to chapter 7 or 11, or to dismiss the case, whichever is in the best interests of creditors and the estate, for cause.

H.R. REP. No. 95–595, at 428 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6383–84. The legislative history clearly establishes that a debtor has a right to dismiss the case "without qualification," and that a court is required to do so upon request of the debtor. Nothing in the legislative history indicates that the court may exercise discretion when considering a debtor's motion to dismiss. *In re Sanders,* 100 B.R. 338, 340 (Bankr. S.D.Ohio 1989); *Looney,* 90 B.R. at 218.

### Step 3: Purposes of Statute

In addition to the language and legislative history of a statute, courts may look to the object, purpose and policy behind the statute to ascertain the intent of Congress. *Crandon v. United States,* 494 U.S. 152, 156–58, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990); *Commissioner v. Engle,* 464 U.S. 206, 216–17, 104 S.Ct. 597, 604, 78 L.Ed.2d 420 (1984); *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 118–20, 103 S.Ct. 986, 995, 74 L.Ed.2d 845 (1983), *reh'g denied,* 461 U.S. 911, 103 S.Ct. 1887, 76 L.Ed.2d 815 (1983). Holding that a debtor has an absolute right to dismiss comports with the policy behind the voluntary nature of Chapter 13, which dictates that no one should be required to work for a creditor. *Greenberg,* 200 B.R. at 767; *Harper–Elder,* 184 B.R. at 408; *Beatty v. Traub (In re Beatty),* 162 B.R. 853, 857

(9th Cir.1994); *Looney,* 90 B.R. at 218. Judge Teel, in the well-reasoned *Harper–Elder* decision, elaborated upon this argument as follows:

> Chapter 13 was intended to be [a] purely voluntary chapter, as demonstrated by § 303(a) which provides that a chapter 13 case may not be commenced involuntarily. Furthermore, debt repayment must be on the debtor's terms, albeit meeting certain statutory criteria, because under § 1321 only the debtor may file a chapter 13 plan. Moreover, restricting the debtor's unqualified right of dismissal under chapter 13 would mark a significant departure from the law under the former Bankruptcy Act. Under Section 666 of the Bankruptcy Act and Rule 13–112(a)(2), the court could not convert a case from Chapter XIII to Chapter VII without the debtor's written consent. "This freedom to choose between liquidation and debt adjustment was preserved in the Bankruptcy Code. While consent is no longer required to effect a conversion, [the debtor] does have a guaranteed right of dismissal." *See In re Hearn,* 18 B.R. at 606.

*Harper–Elder,* 184 B.R. at 408. Judge Teel went on to note that Congress has codified a procedure by which a creditor may force an unwilling debtor into a Chapter 7 liquidation—the involuntary petition pursuant to 11 U.S.C.A. § 303 (West 1993 & Supp.1997) [4] *Harper–Elder,* 184 B.R. at 408. To allow a creditor to convert a Chapter 13 case to a Chapter 7 liquidation notwithstanding a pending motion to dismiss filed by the debtor would permit the creditor to effectuate an involuntary petition without the need to satisfy the requisites of § 303. *Id.*

For these reasons, the court is confident that Congress intended to provide Chapter 13 debtors with an absolute right to dismiss their case notwithstanding a competing motion to convert. The court is cognizant that such a holding renders § 1307(c) nugatory under the circumstances. However, given that competing motions to dismiss and convert unavoidably lead to such a result, the court is satisfied that the plain language of the statute, the legislative history, and the objectives and policies underlying the Bankruptcy Code persuasively establish Congress' intent that a debtor's right of dismissal trumps a creditor's right to convert under such circumstances. By its holding, this court joins a host of others that have reached the same conclusion. *See Greenberg,* 200 B.R. at 767 (collecting cases); *Harper–Elder,* 184 B.R. at 404 (collecting cases); *Sanders,* 100 B.R. at 340 (collecting cases); *Looney,* 90 B.R. at 218 (collecting cases).

## III

Finley W. Reed, Jr., urges the court to follow the reasoning of a number of courts that have held that a debtor does not have an absolute right to dismiss where a competing motion to convert has been filed.[5] Foremost, Mr. Reed cites the only reported court of appeals case on the issue, *Molitor v. Eidson (In re Molitor),* 76 F.3d 218 (8th Cir.1996). In *Molitor,* the Eighth Circuit premised its holding on: (1) the "same broad purpose as well as the principles of statutory construction employed in" its prior decision of *In re Graven,* 936 F.2d 378 (8th Cir.1991)[6] in which it held that a Chapter 12 debtor does

---

4. 11 U.S.C.A. § 303 (West 1993 & Supp.1997) provides in material part:

    (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title-
    (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute ... if such claims aggregate at least $10,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

    (2) if there are fewer than 12 such holders ... by one or more of such holders that hold in the aggregate at least $10,000 of such claims[.]

5. Courts that have held § 1307(c) to be a limitation on a debtor's right to dismiss under the authority of § 13070(b) have done so for the purpose of preventing a debtor from manipulating the bankruptcy code in furtherance of fraudulent conduct. *See Casteel,* 207 B.R. at 187 (collecting cases); *Greenberg,* 200 B.R. at 767 (collecting cases); *Harper–Elder,* 184 B.R. at 404 (collecting cases).

6. *Graven* is the second of four decisions that Mr. Reed urges the court to follow.

not have an absolute right to dismiss under 11 U.S.C.A. § 1208 (West 1993), a statutory section that is nearly identical to the provisions of § 1307[7]; and (2) the concern that "[t]o allow [a debtor] to respond to a motion to convert by voluntarily dismissing his case with impunity would render section 1307(c) a dead letter and open up the bankruptcy court to a myriad of potential abuses." *Molitor*, 76 F.3d at 220.

This court does not find the Eighth Circuit's concern over § 1307(c) becoming a "dead letter" to be persuasive. As noted above, one of the subsections of § 1307 must inevitably be rendered meaningless when a court is required to determine which of two competing motions under subsections (b) and (c) prevail. As to the Eighth Circuit's fear of potential abuse stemming from a debtor's absolute right to dismiss, this court appreciates the potential for abuse but does not believe that this permits the judiciary to rewrite an unambiguous statute to prevent an unfavorable result. *See Commissioner v. Asphalt Prods. Co., Inc.*, 482 U.S. 117, 121, 107 S.Ct. 2275, 2278, 96 L.Ed.2d 97 (1987) ("Judicial perception that a particular result would be unreasonable may enter into the construction of ambiguous provisions, but cannot justify disregard of what Congress has plainly and intentionally provided."); *see also Baum v. Madigan*, 979 F.2d 438, 443 (6th Cir.1992).

The only remaining premise of the *Molitor* decision is its reliance upon the principles of statutory construction employed in *Graven*. As previously noted, *Graven* addressed the issue of whether a Chapter 12 debtor possesses an absolute right to dismiss under the authority of § 1208(b) notwithstanding a pending motion to convert pursuant to § 1208(d).[8] In reaching the conclusion that a Chapter 12 debtor does not have an absolute right to dismissal under the circumstances,

the *Graven* court relied upon the following principles of statutory construction:

When interpreting a statute we look not only to the express language, however, but also to the overall purpose of the act. The Supreme Court has directed that we not "construe statutory phrases in isolation." *United States v. Morton*, 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984). We must also consider "the design of the statute as a whole and ... its object and policy." *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990). *See also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979) ("As in all cases of statutory construction, our task is to interpret the words of these statutes in light of the purposes Congress sought to serve")[.]

*Graven*, 936 F.2d at 385. This court respectfully disagrees with *Graven's* application of these principles for two reasons. First, the Eighth Circuit rushes to secondary cannons of construction under circumstances where the plain language of the statute clearly speaks to the issue. *See Harper–Elder*, 184 B.R. at 405 (concluding that the Eighth Circuit ignored the plain language of the statute) (citing *Ron Pair Enters., Inc.*, 489 U.S. at 240–42, 109 S.Ct. at 1030). The Eighth Circuit did so after it acknowledged that "[s]ection 1208(b) appears to mandate dismissal upon request of the debtor-farmer." *Graven*, 936 F.2d at 384. Second, if there is arguably ambiguity in §§ 1208 and 1307 that permits the courts to look beyond the plain language of the statutes, this court disagrees that the purposes of the Code are carried out by forcing a Chapter 12 or 13 debtor into an involuntary Chapter 7. Such a result flies in the face of the voluntary nature of these chapters and circumvents the standards for an involuntary liquidation set forth in § 303. *Graven* concluded that "the purpose of the

---

7. 11 U.S.C.A. § 1208 (West 1993) provides in material part:

   (b) On request of the debtor at any time, if the case has not been converted under section 706 or 1112 of this tide, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.
   . . . .

(d) On request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter or convert a case under this chapter to a case under chapter 7 of this title upon a showing that the debtor has committed fraud in connection with the case.

8. *See supra* note 7.

bankruptcy code is to protect the honest debtor, not to provide a shield for those who exploit the code's protection then seek to escape judicial authority when their fraudulent schemes are exposed." *Graven,* 936 F.2d at 385. If the code is designed to protect only the honest debtor, then why place the fraudulent debtor, who seeks to dismiss, under the protections that Chapter 7 provides? As the Eighth Circuit stated, the bankruptcy code is designed "to protect." Yet, *Graven* and *Molitor* are using it to punish the dishonest debtor. Does such a construction of §§ 1208 and 1307 truly comport with the purpose and objectives of the code? This court does not believe so. The dishonest debtor is amply punished through the dismissal of the case, which leaves the debtor vulnerable to the full extent of a creditor's rights under state law. This court finds it difficult to view this as an "escape" from judicial authority. *See Harper–Elder,* 184 B.R. at 407 (concluding that a debtor does not benefit from a dismissal).

In addition to the aforementioned statutory principles, the Eighth Circuit premised its conclusion on the argument that providing a Chapter 12 debtor with an absolute right to dismiss would render § 1208(d) meaningless when there is a pending motion to convert. *Graven,* 936 F.2d at 385. As mentioned previously, this argument carries no weight since either party could make the same argument. The final argument advanced in *Graven* serves to undermine the *Molitor* holding. In *Graven,* the Eighth Circuit reasoned that a Chapter 12 debtor's dismissal motion did not necessitate immediate court action since FED. R. BANKR. P. 1017(a) first required notice and a hearing on all voluntary dismissal motions "[e]xcept as provided in §§ 707(b) and 1307(b)." [9] The court reasoned that "[t]he failure of Congress to include section 1208(b) in that same clause indicates that

Congress intended for the hearing and notice provisions to apply to creditors of Chapter 12 debtors." *Graven,* 936 F.2d at 386. This analysis, although no longer viable within the context of Rule 1017(a) in its present form,[10] conversely stands for the proposition that Congress knew exactly what it was doing when it created an exception to the notice and hearing requirement for § 1307(b). Such an argument hardly supports the *Molitor* holding. Based upon the preceding analysis of the *Graven* decision, this court does not find the premises of the *Molitor* decision to be persuasive.

In addition to *Molitor* and *Graven,* Mr. Reed relies on the decision of *Gaudet v. Kirshenbaum Investment Co., Inc. (In re Gaudet),* 132 B.R. 670 (D.R.I.1991). *Gaudet* advances three principal arguments in support of its holding that a Chapter 13 debtor does not possess an absolute right to dismiss the case. First, the court noted that a holding to the contrary would render subsection (c) a nullity. Again, this is not a persuasive argument. Because the same argument could be made by debtors in regard to subsection (b), courts must resolve this issue by determining which of the two subsections Congress intended to render a nullity within the context of competing motions to dismiss and convert. Similarly, *Gaudet* also reasons that § 1307(c) "makes it clear that certain types of misconduct by the debtor ... may constitute 'cause' for conversion." *Id.* at 675 (footnote omitted). This argument is also unpersuasive. Section 1307(b) makes it clear that courts "shall" dismiss the debtor's case unless it has previously been converted. A more thorough statutory analysis is required to discern the intent of Congress.

Second, *Gaudet* reasons that " § 1307(e) which prohibits conversion 'if the debtor is a farmer, unless the debtor requests such con-

---

**9.** Specifically, at the time *Graven* was written, FED. R. BANKR. P. 1017(a) provided in material part:

Except as provided in §§ 707(b) and 1307(b) of the Code, a petition shall not be dismissed on motion of the petitioner or for want of prosecution or other cause or by consent of the

parties prior to a hearing on notice to all creditors as provided in Rule 2002(a).... 
Rule 1017(a) has been amended to now include § 1208(b) as an exception to its notice and hearing provisions.

**10.** *See supra* note 9.

version' clearly implies that, if the debtor is *not* a farmer, the case *may* be converted without the debtor's consent and despite the debtor's opposition." *Id.* This court does not agree that this provision overrides the express language of § 1307(b) that provides a debtor with an absolute right to dismissal. When conversion from Chapter 13 is contemplated, four possibilities arise. First, the non-farmer debtor may request conversion, whereupon the case will be converted. Second, a party in interest may seek conversion, whereupon the non-farmer debtor has three options: either oppose the motion by moving to dismiss, oppose the motion by arguing that cause does not exist to justify conversion, or advance no opposition to the conversion motion. Section 1307(e) does not negate a debtor's absolute right to dismiss provided by the plain language of § 1307(b). *See Harper–Elder*, 184 B.R. at 408 ("While consent is no longer required to effect a conversion, [a non-farmer debtor] does have a guaranteed right of dismissal."). Instead, it simply provides that a farmer-debtor does not have to oppose the conversion motion on the grounds of cause if the farmer-debtor does not want to dismiss the case. The non-farmer debtor does not enjoy the same privilege. The non-farmer debtor that does not request conversion must either dismiss, oppose on the grounds of cause or accept the consequences of conversion if cause exists and the court determines that conversion, rather than dismissal, is in the best interests of creditors.

The final argument relied upon in *Gaudet* is that Congress could not have intended to provide the debtor with "unfettered power to prevent conversion under § 1307(c) by simply filing a motion to dismiss whenever conversion was requested." *Gaudet,* 132 B.R. at 676. This court disagrees. The court reiterates the rule that a court's disfavor of a particular result does not justify disregard of the plain language of a statute set forth by Congress. *See Asphalt Prods. Co., Inc.,* 482 U.S. at 121–23, 107 S.Ct. at 2278. Under such circumstances, it is for Congress to rewrite the statute, not the courts. *See Harper–Elder,* 184 B.R. at 406 ("Simply because

the courts are concerned about abuse is not an excuse to rewrite the statute.").

Finally, Mr. Reed relies on the decision of *In re Vieweg,* 80 B.R. 838 (Bankr.E.D.Mich. 1987). In *Vieweg,* the bankruptcy court began its analysis by noting that "[t]he language of § 1307(b) appears to be clear and unambiguous." *Id.* at 840. However, without citing a single standard of statutory interpretation or scrutinizing the language or legislative history of the statute, the court reasoned:

> This Court prefers an analysis which harmonizes §§ 1307(b) and (c).... To say Congress intended that a debtor could thwart a creditor's opportunity even to present his proofs by filing a motion to dismiss, thus relegating the creditor to pursuit of his remedies in yet another forum, a state court, defies reason.

*Id.* at 841. This may or may not be true, but holding that a debtor possesses an absolute right to dismiss does not defy the express language of the statute or the legislative history. The *Vieweg* court concluded "that Congress did not intend that chapter 13 petitions should or could be filed and dismissed at will with no recourse to creditors." *Id.* at 843. This court is not persuaded by a finding of Congressional intent that does not follow the procedure set forth by the Supreme Court to ascertain that intent. *See Toibb,* 501 U.S. at 161–63, 111 S.Ct. at 2200; *Blum,* 465 U.S. at 896–98, 104 S.Ct. at 1548. As a result, the court is not persuaded by the decisions relied upon by Mr. Reed. Instead, this court holds that a Chapter 13 debtor possesses an absolute right to dismiss the case notwithstanding a competing motion to convert.

## IV

The court must address one other issue peripherally related to the Debtors' Motion to Dismiss. A Motion for Sanctions was filed by Finley W. Reed, Jr., on May 27, 1997, requesting that the court impose monetary sanctions against the Debtors for attorney's fees and expenses incurred in connec-

tion with the April 30, 1997 hearing on Mr. Reed's Motion and Objection to Confirmation which were continued to May 7, 1997. The Debtors' Motion to Dismiss was, as previously discussed, filed on May 6, 1997. Although Mr. Reed's counsel cites no specific statute or Federal Rule of Bankruptcy Procedure in support of this motion, the court nonetheless retains jurisdiction to impose sanctions, if appropriate, notwithstanding the Debtors' voluntary dismissal of this Chapter 13 case. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S.Ct. 2447, 2455, 110 L.Ed.2d 359 (1990) ("[N]othing in the language of Rule 41(a)(1), Rule 11, or other statute or Federal Rule terminates a district court's authority to impose sanctions after ... [plaintiff's voluntary dismissal of his action]."); *Bone v. Ware (In re Sherrod)*, 200 B.R. 271, 273 (Bankr.N.D.Ga.1996) ("The court ... has jurisdiction to impose sanctions whether or not the dismissal [by the debtor of his Chapter 13 case] was vacated."); *In re Slaughter*, 191 B.R. 135, 139 (Bankr. W.D.Wis.1995) (Concluding that the court retains jurisdiction over Rule 9011 issues after dismissal of Chapter 13 case). The Motion for Sanctions will be set for hearing by separate order.

## V

For the foregoing reasons, the Debtors' Motion to Dismiss, filed on May 6, 1997, will be granted and the Motion to Dismiss or Convert Case to Chapter 7, filed by Finley W. Reed, Jr., conservator for Edna Mae Pardue, on March 3, 1997, will be denied. An appropriate order will be entered.