**In re Greg D. CASTEEL.**

**Bankruptcy No. 95–50615S.**

United States Bankruptcy Court,
E.D. Arkansas,
Pine Bluff Division.

March 13, 1997.

**186**

Rosalind Mouser, Pine Bluff, for Belarus Machinery, Inc.

William Benton, for debtor.

### ORDER OF DISMISSAL

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon motions requesting either conversion or dismissal of the bankruptcy case. The creditor Belarus Machinery, Inc, ("Belarus"), by motion filed on January 8, 1997, and the Chapter 13 trustee, seek conversion of this case to a case under Chapter 7 of the Bankruptcy Code. The debtor asserts that he has an absolute right to dismiss his case, having filed a motion for voluntary dismissal on December 26, 1996. Both the Chapter 13 trustee and the creditor Belarus oppose the motion. The matter was called for trial on February 25, 1997, all parties appearing.

Greg Casteel, with twelve years experience as a barber, decided to put the lot surrounding his barber shop into use. Accordingly, in September 1994, he created and/or incorporated a tractor equipment company and other companies, including Casteel Farm Implement Co and Casteel World Group. Being completely unfamiliar with the equipment trade, he entered into a partnership agreement with Edgar Snow under which Snow would operate the companies as general manager. Snow claimed to have thirty years experience in the tractor business and convinced Casteel that they would earn $300,000 per month. Casteel continued to operate his barber shop while Snow operated the equipment businesses.

Casteel filed this individual Chapter 13 case on September 22, 1995, and the partnership with Snow terminated around that time, numerous lawsuits having been filed against the companies and Casteel, individually. In December 1995, a hearing on confirmation of the plan was held, at which time it became evident that the debtor was not eligible for Chapter 13, had failed to list many items on his schedules, and that his finances, as well as those of his companies, were hopelessly intertwined and confused. Belarus and the Chapter 13 trustee believe that the appointment of a Chapter 7 trustee is necessary, while the debtor seeks dismissal in order to deal with his creditors "one-on-one."

The issue before the Court is whether the Court can convert a Chapter 13 case despite the pendency of the debtor's motion to dismiss. The language of section 1307(c) permits the Court to convert a case "for cause," while section 1307(b) appears to mandate dismissal upon the debtor's motion. The Bankruptcy Code provides in pertinent part:

> (b) On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court *shall dismiss* a case under this chapter.\* \* \*
>
> (c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court *may convert* a case under this chapter to a case under chapter 7 of this title, *or may dismiss* a case under this chapter, whichever is in the best interests of creditors and the estate, for cause\* \* \*[1]

11 U.S.C. § 1307(b), (c) (emphasis added).

■ Although there is a split of authority among the circuits as to whether a debtor has an absolute right to dismiss a case, com-

---

1. A nonexclusive list of matters constituting "cause" follows.

pare *Molitor v. Eidson* (*In re Molitor*), 76 F.3d 218 (8th Cir.1996), with *In re Harper-Elder*, 184 B.R. 403 (Bankr.D.D.C.1995) (absolute right to dismiss) and *In re Greenberg*, 200 B.R. 763 (Bankr.S.D.N.Y.1996) (permitting dismissal but imposing sanctions upon debtor), it is well-settled in this circuit that a debtor does not have the absolute right to dismiss a voluntary Chapter 13 case where abuse of the Bankruptcy Code is shown. *Molitor*, 76 F.3d 218; *see In re Graven*, 936 F.2d 378 (8th Cir.1991) (Chapter 12 case). The reasoning in *Molitor* is based not only upon the statute, but also upon the purposes of Chapter 13. *Molitor*, 76 F.3d at 220 ("We are mindful that the purpose of the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts.").

It is important to note, however, that those courts which restrict dismissal uniformly require some form of bad faith or abuse of the bankruptcy process. *See, e.g., Molitor*, 76 F.3d 218; *In re Howard*, 179 B.R. 7 (Bankr. D.N.H.1995); *cf. In re Gaudet*, 132 B.R. 670 (D.N.H.1991) (requiring bad faith *and* prejudice). Indeed, the Court has found no authority which *denied* the debtor's right to dismiss a case, despite the pendency of a motion to convert, absent circumstances of bad faith. Of course, some courts, as did this Court, delay ruling upon the motion to dismiss until such time as the issue of bad faith can be heard. *See Howard*, 179 B.R. at 9 ("Under these circumstances the Court may either delay action on the pending motion to dismiss to investigate allegations of fraud ... or, in the case of a contemporaneously pending motion to convert, respond first to the merits of the motion to convert before consideration of the motion to dismiss.").

The Court has heard evidence of this debtor's conduct on two occasions, on December 17, 1996, at the hearing on the Objection to Confirmation, and on February 25, 1997, at the hearing on the motion to dismiss and the motion to convert. It is clear to the Court that this debtor is incapable of operating a complex business. The debtor displayed a startling unfamiliarity with his own transactions and the transactions of his various corporations. His excuse throughout the pro-

ceedings was that it was somebody else's job and he relied upon others. The debtor failed to respect the identity of his corporations, intermingled assets and liabilities, and generally treated the businesses as sole proprietorships. For example, funds derived from one business were deposited into the account of a second business, and then used to pay the payments in the debtor's individual Chapter 13 case. The businesses at issue at these hearings only operated for one year, yet, by the time of the bankruptcy filing were hopelessly confused with his other businesses and his own finances. Although the debtor had two months, from the first hearing to the second, to sort out the finances to better present his case to the Court, he was unable to do so.

This is not to say that the Court believes that this case was filed in bad faith, that the plan was filed in bad faith, or that the debtor seeks to abuse the bankruptcy process. The Court believes the testimony of the debtor, and, indeed, both the Chapter 13 trustee and Belarus do not disbelieve the debtor. Rather, this Court agrees with their conclusion that this debtor simply is incapable of operating affairs of this complexity. He has neither the ability nor the skills to maintain the businesses, track his assets, and maintain personal finances. In addition, the debtor received, from managers and attorneys, bad advice which has placed him and his finances in untenable circumstances.

 The Court agrees that a trustee should be in place to effect an orderly liquidation of the assets of the debtor—and the corporations because they are one in the same. Indeed, it is beyond dispute that were the motion to dismiss not pending, cause exists for conversion of this case. However, absent a finding of bad faith, the Bankruptcy Code does not permit the Court to ignore the mandatory language of section 1307 which requires that a court dismiss a case upon the debtor's motion. Chapter 13 was intended to be purely voluntary. *See* 11 U.S.C. § 303(a) (Chapter 13 may not be commenced involuntarily); *Harper-Elder*, 184 B.R. at 408. Debt repayment, although it must meet the requirements of Chapter 13 plan criteria, is essentially made upon the debtor's terms, and, unlike a Chapter 11 case, only a debtor may file a plan in a Chapter 13 case. As

noted in *Harper–Elder,* "Congress has provided a method for placing reluctant debtors into liquidation—filing an involuntary petition under § 303." *Id.* It may be, under the circumstances, that should the debtor not be able to satisfy his debts outside of bankruptcy that an involuntary case is the only remedy available to the creditors. While the debtor's right to dismiss his case is not, in the face of bad faith or abuse, unfettered, this Court is unwilling, in light of the mandatory language of section 1307(b) and the purposes of Chapter 13, to extend the policy and exception stated in *Molitor* to circumstances in which bad faith is not factually present. Inexperience and ineptitude, coupled with the extremely poor advice and the incompetent assistance of not only a manager but several attorneys, do not amount to the bad faith necessary to overcome the debtor's right not to continue a voluntary Chapter 13 case.

**ORDERED** as follows:

1. The creditor Belarus Machinery, Inc.'s Motion to Convert, filed on January 8, 1997, is DENIED.

2. The debtor's Motion for Voluntary Dismissal, filed on December 26, 1996, is GRANTED.

3. This Chapter 13 case is DISMISSED.

**IT IS SO ORDERED.**